UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| | | | |
|---|---|---|---|
| In re: | ) | | |
| | ) | | |
| KENNETH GREGORY HOOD, | ) | Case No.: | 11-13704-JDW |
| | ) | | |
| Debtor. | ) | Chapter: | 13 |
| | ) | | |

| | | | |
|---|---|---|---|
| CHARLES D. ZIEGLER, | ) | | |
| | ) | | |
| Plaintiff/Counter-Defendant. | ) | | |
| | ) | | |
| v. | ) | A.P. No.: | 11-01203-JDW |
| | ) | | |
| KENNETH GREGORY HOOD, | ) | | |
| | ) | | |
| Defendant/Counter-Plaintiff. | ) | | |
| | ) | | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment (the "Motion")(Dkt. # 101) filed by Plaintiff/Cross-Defendant Charles D. Ziegler (the "Plaintiff") in the above-styled adversary proceeding. The Motion was filed, along with Plaintiff's Brief in Support of Motion for Summary Judgment, on June 21, 2013, and on July 17, 2013, Defendant/Counter-Plaintiff Kenneth Gregory Hood filed a response thereto (the "Response")(Dkt. # 105). A reply by the Plaintiff was filed on August 6, 2013 (the "Reply")(Dkt. # 114). This Court has jurisdiction pursuant to 28 U.S.C. § 151, 157(a) and 1334(b) and the United States District Court for the Northern District of Mississippi's Order of Reference dated August 6, 1984. This is a core proceeding arising under Title 11 of the United

1

States Code as defined in 28 U.S.C. § 157(b)(2)(A), (B), (C), (H), (K) and (O).[1] The Court must decide whether the summary judgment is due to be granted as to Defendant's liability on certain promissory notes executed by the Defendant in favor of Covenant Bank and later purchased by, and assigned to, Plaintiff. Further, this Court must decide whether Plaintiff's Motion is due to be granted with regard to Defendant's counterclaims of fraud, misrepresentation, breach of contract and fraudulent conveyance. No hearing on the Motion is necessary. The Court has considered the pleadings, evidence, briefs and the law, and finds and concludes as follows.

## I.   FINDINGS OF FACT

Rule 56 of the Federal Rules of Civil Procedure[2] provides in pertinent part:

> (e) If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> ....
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it;
> ....

FED. R. CIV. P. 56. In the case before the Court, the non-moving party – the Defendant – has submitted to the Court a Response to the Motion wherein the Defendant fails to address all of the facts, assertions, and allegations put forth in the Plaintiff's Motion. Therefore, in regard to facts asserted by the Plaintiff (and supported by proper evidence) to which the Defendant is silent and

---

[1] This Memorandum Opinion constitutes findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable to adversary proceedings in bankruptcy by Federal Rule of Bankruptcy Procedure 7052. To the extent it may be determined that this Court does not have the power to enter final judgment with regard to the issues addressed herein, this Memorandum Opinion may be considered proposed findings of fact and conclusions of law and/or a report and recommendation.

[2] Federal Rule of Bankruptcy Procedure 7056 incorporates without modification of Rule 56 of the Federal Rules of Civil Procedure.

2

has submitted no evidence, the Court may deem those facts as undisputed. *Id.* Nevertheless, the Court must still judge the reliability, correctness and relevance of the evidence submitted by the Plaintiff. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). For purposes of this Motion, the following facts are undisputed.

Defendant operated a Mississippi company, Southern Game Calls, Inc. ("SGCI"), which manufactured and sold bird hunting game calls. From 2004 to 2009, Defendant executed various promissory notes payable to Covenant Bank (the "Bank"). The notes were periodically renewed and were secured by collateral owned by SGCI, including inventory, equipment, accounts receivable and chattel paper. As shown in the evidentiary submissions, all three notes at issue in this case were executed by SGCI through its principal, the Defendant. *Id.* The notes were also personally guaranteed by Defendant and on July 14, 2003, Defendant executed *Irrevocable Powers of Attorney for Transfer of Stock* in favor of the Bank to transfer two (2) Coahoma County Conservation League, Inc. stock certificates held by the Defendant and identified as certificates 203 and 204 (the "Certificates" and collectively with the promissory notes, the security agreements, and the guaranty executed by the Defendant, the "Loan Documents") to secure the debt. The parties agree that the Certificates are worth $33,000.00 each.

The Plaintiff subsequently purchased the Loans and Loan Documents from the Bank, and on January 19, 2010, the Bank assigned to Plaintiff all of its right, title and interest in the Loan Documents. In his deposition, Defendant admitted to being told of the assignment and understanding that Plaintiff was the new holder of the notes. Defendant further admitted in deposition that he told the Bank that he understood that future payments would be due to Plaintiff and not to the Bank. *Id.* The three notes purchased by Plaintiff from the Bank are in default.

The parties dispute the remaining facts. In January 2010, in addition to purchasing the Loan Documents from the Bank, Plaintiff established Southern Game Calls, LLC ("SGCL"), an Ohio limited liability corporation. Plaintiff contends that he hired Defendant as a consultant to sell the same products previously sold by Defendant. Defendant was to turn over SGCI's inventory in partial satisfaction of the loan balances. As part of his new employment with the Plaintiff's company, Defendant was paid $21,166.68 from February to June 2010 as an advance against future commissions. As correspondence between the two parties shows, these payments were for "consulting fees." (Dkt. # 101, Ex. "E", pg. 56, 67; Dkt. # 101, Ex. "G"). Plaintiff filed this adversary proceeding seeking money judgment for amounts owed on the three notes, to be declared the owner of the Certificates, and to be allowed to liquidate the remaining collateral securing the notes. (Dkt. # 2).

Conversely, Defendant contends that while he understood that the Plaintiff had purchased the Loan Documents from the Bank, he believed it was part of a larger transaction. In his Answer and Amended Counterclaim (the "Answer")(Dkt. # 70), Defendant contends that Plaintiff – acting with fraud and through misrepresentation – verbally committed to buy SGCI for the combined purchase price of $250,000.00, the release of the three notes executed by SGCI to the Bank, and the release of the Certificates. *Id.* at 1. In exchange, Plaintiff was to gain possession and ownership of the company's inventory and equipment, and the Defendant was to work as a consultant at five trade shows a year on behalf of the company. *Id.* at 2; (Dkt. # 101, Ex. "A", pg. 34). In short, Defendant contends that Plaintiff agreed to forgive the loans and to pay him $250,000 for the assets of the company. The inventory referenced by Defendant – that he contends was to be included in the sale of the company – was the same inventory Defendant had already pledged to the Bank.

Defendant admits that there exists no written contract evidencing or memorializing the terms of this purported agreement. (Dkt. # 101, Ex. "A", pg. 11)("We didn't have a contract. We had a verbal agreement"). Of the $250,000.00 to be paid by the Plaintiff – purportedly to be paid in $50,000.00 installments over the course of 5 years – Defendant alleges that only about $20,000.00 was paid. (Dkt. # 70, pg. 2). As a result, Defendant claims that he is due the remaining $230,000.00. *Id.* at pg. 2. Consequently, Defendant also contended that Plaintiff is not entitled to the judgment sought (the loans having been forgiven by the parties' oral agreement) and that the Defendant is entitled to the remaining $230,000 of the contract price and to possession of the Certificates. The Defendant submitted no evidence in support of his assertions or refuting Plaintiff's assertions. In fact, in Defendant's Response, the only defense raised is that the Plaintiff's sale of a portion of the collateral was not commercially reasonable.

For the reasons set forth below, the Court finds that there was no contract between Plaintiff and Defendant, other than the Loan Documents purchased by Plaintiff.

## II. CONCLUSIONS OF LAW

### A. Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is properly granted only if:

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Celotex Corp. v. Cartrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In its deliberations, the Court is to make all inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed. 202 (1986). "[A]ll

5

reasonable doubt as to the existence of a genuine issue of material fact 'must be resolved against the moving party.'" *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 892 (5th Cir. 1980) (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d. 406, 410 (5th Cir. 1980)). The moving party is charged with demonstrating a basis on which summary judgment is due to be granted. *Celotex*, 477 U.S. at 323. The nonmoving party must then undertake to show that a genuine issue of material fact exists as to that issue. *Id.* at 324. Although the movant still bears the ultimate burden of proof, the non-movant must provide the court with something more than the party's own pleadings to demonstrate the existence of a genuine issue for trial. "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials...except the mere pleadings themselves..." *Id.* Further, summary judgment is properly granted when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." *Id.* at 323; *Archie v. Acceptance Indem. Ins. Co.*, 507 Fed.App'x. 451, 452 (5th Cir. 2013). Plaintiff has moved for summary judgment with respect to all claims asserted in the Complaint, as well as the counterclaims asserted by the Defendant.

B. **Defendants Counterclaims**[3]

In his Answer, Defendant alleges that he and the Plaintiff verbally agreed for the Plaintiff to purchase SGCI. It is admitted by the Defendant that no written evidence or memorialization of this agreement exists, but that the parties verbally agreed to this deal sometime prior to the January 2010 assignment by the Bank to Plaintiff. (Dkt. # 70, pg. 1-2; Dkt. # 101, Ex. "A", pg.

---

[3] The Defendant's Response was generally deficient in that Defendant failed to respond to the itemization of material facts and the legal basis in support of the Plaintiff's claims and the Defendant's own counterclaims. Miss. Bankr. L.R. 7056 (1)(B) and (2)(B).

6

12). According to the Defendant's counterclaims, the Plaintiff breached that contract by failing to perform.

Defendant also levels claims of fraud and misrepresentation against the Plaintiff, asserting that Plaintiff came into possession of SGCI's inventory by fraudulently representing to the Defendant that the debts with the Bank would be released in exchange for the transfer of SGCI's assets. (Dkt. # 70, pg. 3).

Lastly, Defendant alleges the transfer of some of the inventory of SGCI (a non-debtor) was a fraudulent conveyance under 11 U.S.C. § 548(a)(1)(A) or (B). *Id.*

Plaintiff sought summary judgment as to the counterclaims and submitted evidence. Defendant submitted no evidence to support the counterclaims, and the Response failed to address the counterclaims at all.

### 1. Oral Agreement and Breach of Contract

The basis for the Defendant's counterclaim for breach of contract rests in the assertion that prior to the Plaintiff's acquisition of the Loan Documents, Plaintiff had verbally assured Defendant that he would be satisfying the debt and that the Defendant would no longer owe any money on the notes. For purposes of this Motion, the Court is first concerned with whether or not there was such a contract. If the Court can find no evidence of a contract, then there can necessarily be no surviving claim for breach of contract.

At the foundation of contract law is the basic principal that formation of a contract requires an offer, acceptance, and consideration. *Houston Dairy, Inc. v. John Hancock Mut. Life Ins. Co.*, 643 F.2d 1185, 1186 (5th Cir. 1981); *Scott v. Magnolia Lady, Inc.*, 843 So.2d 94, 96 (¶9) (Miss. Ct. App. 2003). According to Defendant, Plaintiff initiated the agreement-making process by offering to purchase the Defendant's company, and Defendant accepted this offer

based on the representations made to him. However, Plaintiff denies any such offer ever took place, and instead asserts that any monies paid to Defendant were advances on future sales to be made by Defendant acting in his capacity as an employee of the Plaintiff's company, SGCL. While the Plaintiff has submitted to this Court numerous emails between the parties, discussing Defendant's employment/consulting position, the Defendant has offered no rebutting evidence supporting his claim that there was instead a contract for the sale of the company. In his sworn deposition, Defendant insists that some letters and/or emails between the parties evidencing this agreement do exist, but Defendant failed to submit this purported evidence. (Dkt. # 101, Ex. "A"). Additionally, in the evidence that has been submitted to the Court, the Defendant himself refers to invoices and payments "for consulting fees," and at no time in the documented correspondence makes mention of any other deal the parties may have had. (Dkt. # 101, Ex. "G").

"An integral part of a court's decision in finding whether there is a contract or no contract between parties is having some evidence of such contract, including memoranda, notes, other documents or even oral testimony." *Murphree v. W.W. Transp.*, 797 So.2d 268, 273 (Miss. Ct. App. 2001)(citing *Putt v. City of Corinth*, 579 So.2d, 534, 538 (Miss. 1991)). Without any such evidence supporting the Defendant's position, outside of the uncorroborated claim of the Defendant, the Court cannot conclude that such a contract existed. "Written evidence of a contract serves the purpose of giving a finder of fact the basis to either believe or disbelieve oral testimony that a real transaction between the parties ever existed." *Murphree*, 797 So.2d at 273 (citing *Franklin County Cooperative v. MFC Services*, 441 So.2d 1378, 1378 (Miss. 1983)). Even if all inferences are construed in a light most favorable to Defendant, there is simply no evidence that the contract existed.

The Defendant's assertion that such a contract existed is further complicated by Mississippi's version of the statute of frauds, which states in pertinent part,

> 1) Except as otherwise provided in this section, a contract for the sale of goods for the price of five hundred dollars ($500.00) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.

MISS. CODE. ANN. § 75-2-201 (West). As stated above, no such writing – "sufficient to indicate that a contract for sale has been made" – exists. The Defendant claims in his deposition that the total inventory that was to go to Plaintiff in the sale was worth "a million dollars." (Dkt. # 101, Ex. "A"). If the inventory was worth even a fraction of what the Defendant claims, then any contract between the parties would have been subject to the statute of frauds. As such, without any alleged contract having been reduced to writing, any agreement "is not enforceable by way of action or defense." MISS. CODE. ANN. § 75-2-201.

Mississippi law also requires that "any agreement which is not to be performed within the space of fifteen months from the making thereof..." be reduced to writing. MISS CODE ANN. § 15-3-1 (West). According to the Defendant, the $250,000 from the Plaintiff was to be paid out in $50,000 installments over the course of five years. As such, the contract could necessarily not have been performed within 15 months. "Because the alleged oral contract could not be performed within fifteen months, it violated the Statute of Frauds and is unenforceable." *Burns v. Georgetown Univ.*, 2012 WL 2563037 (S.D. Miss. May 30, 2012) *report and recommendation adopted*, 2012 WL 2563824 (S.D. Miss. June 29, 2012).

Mississippi law does permit oral modification of written contracts, even if the original document provides that all modifications must be made in writing. *Eastline Corp. v. Marion Apartments, Ltd.*, 524 So.2d 582, 584 (Miss. 1988); *City of Mound Bayou v. Roy Collins Constr.*, 499 So.2d 1354 (Miss. 1986). However, that rule does *not* apply if the original written contract

9

itself is subject to the statute of frauds: "[a] modification of a contract within the statute of frauds must also be in writing." *Thompson v. First American Nat. Bank*, 19 So.3d 784, 787 (Miss. Ct. App. 2009)(citing Miss. Code Ann. § 15-3-1); *Favre Property Management, LLC v. Cinque Bambini*, 863 So.2d 1037, 1045 (Miss. Ct. App. 2004). Given that the terms of the loan agreement between the Bank and the Defendant would have been subject to the statute of frauds (each loan being of a duration greater than fifteen months), any modifications to those terms (including any after the assignment took place) would similarly be subject to the statute of frauds. *Thrash v. Countrywide Commercial Real Estate Fin., Inc.*, 405 F. App'x 816, 818-19 (5th Cir. 2010).

For the foregoing reasons, Defendant's breach of contract counterclaim fails as a matter of law under a statute of frauds analysis. Even if this claim was not subject to the statute of frauds, the only evidence before the Court compels the conclusion that no oral contract existed.

2. <u>Fraud and Misrepresentation</u>

In 1984, the Court of Appeals for the Fifth Circuit held in *Walker v. U-Haul Co. of Mississippi*, 734 F.2d 1068 (5th Cir. 1984) that "the Mississippi statute of frauds does not bar an action for damages incurred in reliance on an oral promise that is itself unenforceable." *Id.* at 1078. The court made clear that where the relief sought is specific performance, estoppel is not an exception to the statute of frauds writing requirement, but that it *is* an appropriate exception when the party is seeking money damages. *Walker*, 734 F.2d at 1078; *Futch v. James River-Norwalk, Inc.*, 722 F.Supp. 1395, 1400 (S.D. Miss. 1989) *aff'd sub nom. Futch v. River-Norwalk*, 887 F.2d 1085 (5th Cir. 1989). As the Defendant seeks monetary damages on the claim of fraud/misrepresentation, and not specific performance, the Court may entertain the claim, despite the conclusion that the underlying breach of contract claim fails under the statute of frauds.

A party seeking to establish a claim of fraud/misrepresentation must show

> (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.

*Franklin v. Lovitt Equip. Co., Inc.*, 420 So. 2d 1370, 1373 (Miss. 1982). Demonstrating a prima facie case of fraud carries with it a burden of proof by clear and convincing evidence. *Moore v. Bailey*, 46 So.3d 375, 384 (Miss. Ct. App. 2010). At this time, however, the Court is not concerned with whether the Defendant has met his burden of proof, only "whether there is sufficient evidence to show a genuine issue of material fact sufficient to defeat the [Defendant's] motions for summary judgment." *Id.*

As stated above, Defendant has failed to make any showing that Plaintiff made any sort of representation – oral or written – that he intended or was planning to purchase the Defendant's company. Without evidence that an offer was extended, or representation made, the Court cannot conclude that the Defendant can show the first requisite element.

Consequently, without any showing of a representation having been made, the Court is necessarily unable to analyze (and the Defendant has not attempted to show) the contingent elements of the representation's falsity, its materiality, the Plaintiff's knowledge of its falsity or intent that the Defendant act in reliance thereon, the Defendant's ignorance of its falsity or reliance on its truth, and Defendant's consequent and proximate injury.[4] Establishing that a representation was made is the first element the Defendant must satisfy before any other

---

[4] Though the Court never effectively reaches the final element, it bears noting that the Defendant faces the greatest hurdle in showing consequential and proximate injury. Defendant owes no greater obligation or liability than he would have had the Bank never assigned the notes. Defendant owes the same amount to Plaintiff that he previously owed to the Bank.

elements may even be considered. The Defendant's failure to address this counterclaim in his Response or to submit any evidence in support is fatal to this claim. *Archie*, 507 Fed.App'x. at 452.

### 3. Fraudulent Conveyance

In his Answer, Defendant alleges that, pursuant to 11 U.S.C. §548(a)(1)(A) or (B), the Chapter 13 Trustee is entitled to avoid any transfer of interest, or any obligation incurred by the debtor, that was made or incurred on or within two (2) years of the petition date. (Dkt. # 105, pg. 3). Though this is a vaguely familiar recitation of the statute, the Defendant overstates the applicability of § 548. First, § 548(a)(1)(A) allows for the trustee[5] to exercise avoidance powers if the debtor (the Defendant in this case) "made such transfer or incurred such obligation *with actual intent to hinder, delay, or defraud...*" 11 U.S.C. §548(a)(1)(A) (emphasis added). Defendant has neglected to provide any evidence or examples of acting with his own "actual intent to hinder, delay or defraud" in the Answer, and failed to even broach the subject in the Response. Defendant also failed to demonstrate examples of even the "badges of fraud" – characteristics, qualities or elements from which one may infer actual intent.[6] *See In re Soza*, 542 F.3d 1060, 1067 (5th Cir. 2008)(quoting *In re Chastant*, 873 F.2d 89, 91 (5th Cir. 1989)). Under § 548(a)(1)(A), the party seeking to set aside the transfer bears the burden of proving actual intent to defraud. *In re Chastant*, 873 F.2d at 90. As that burden would fall to the

---

[5] The Chapter 13 Trustee did not file a fraudulent conveyance adversary proceeding in this case.

[6] "Badges of Fraud" from which one may infer actual intent include: "(1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of events and transactions under inquiry." *Chastant v. Chastant (In re Chastant)*, 873 F.2d 89, 91 (5th Cir.1989).

12

Defendant at trial, so too does the obligation rest with the Defendant to submit some evidence in response to a motion for summary judgment where the Plaintiff has submitted sufficient evidence. *Celotex*, 477 U.S. 322. Defendant fails on this issue in that "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir.2003).

Similarly, the Defendant is unable to survive summary judgment under §548(a)(1)(B). Subsection (a)(1)(B) requires that the debtor:

> (B) (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> (ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

11 U.S.C.A. § 548 (West). Defendant's claim is undermined for failure to show that he received less than a reasonably equivalent value in exchange for such transfer or obligation. Defendant's obligation under the Loan Documents had been previously incurred and the Defendant did receive the loan proceeds. Defendant had granted a security interest in the collateral at the same time. Thus, Plaintiff did not purchase the inventory from the Defendant – for a reasonably equivalent value or not. Any inventory obtained by the Plaintiff was collateral already pledged for the defaulted loans now held by the Plaintiff. The "transfer" in question, for § 548 purposes, was the granting of security interest in the collateral by the Defendant, and not the physical

13

repossession of the collateral by the Plaintiff. *In re O & G Leasing, LLC*, 456 B.R. 652, 668 (Bankr. S.D. Miss. 2001); *see also,* 11 U.S.C. § 101(54). The most recent Loan Document (and thus the most recent grant of a security interest in the property) was executed in June, 2009. The Defendant filed for bankruptcy on August 16, 2011. Therefore, the "transfers" in question are outside the applicable two-year time frame.[7]

For the foregoing reasons, summary judgment is appropriate as to all counterclaims.

### C. Plaintiff's Claims and Motion for Summary Judgment

#### 1. Claim on Loans and Liability

It is undisputed that the Bank held three notes executed on behalf of SGCI that were personally guaranteed by the Defendant. The loans were secured by a security interest in company's inventory and equipment, and the Certificates. (Dkt. # 101, Ex. "C1," "C2," and "C4"). It is also undisputed that the Bank assigned these Loans and Loan Documents to the Plaintiff. *Id.*

It is well settled law that "in assignments of contracts between parties an assignee obtains no greater right in the thing assigned than was possessed by the assignor, but simply stands in the shoes of the latter and assignee's rights can rise no higher than assignor's." *Ford v. White*, 495 So. 2d 494, 497 (Miss. 1986). An assignment does not modify the obligor's rights assigned to the assignee, but rather, the contractual rights, interests and remedies remain unaltered. *Southern Mississippi Planning and Development Dist. v. Alfa General Ins. Corp.*, 790 So.2s 818, 821-823

---

[7] It also bears noting that the inventory that was obtained by the Plaintiff was ostensibly owned by SGCI – not the Debtor/Defendant. *See Bergier v. I.R.S.*, 496 U.S. 53, 59, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990)("'property of the debtor' subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of the bankruptcy proceedings.")

14

(Miss. 2001). In other words, Plaintiff now has the same rights and obligations previously held by the Bank.

As Plaintiff has stepped into the shoes of the Bank, he is firmly within his rights to seek judgment as to amounts due under the terms of the Loan Documents. *Id.* at 821 ("The general rule in Mississippi is that the right to receive money due or to become due under an existing contract may be assigned."). In order to prevail on a motion for summary judgment to determine the liability of Defendant on the notes, the Plaintiff – having already demonstrated the existence of a valid contract between the parties – must prove to the Court the "amount of the debt, that it remains unpaid, and that it is now due and payable." *Brown v. Credit Center, Inc.*, 444 So.2d 358, 365 (Miss. 1983). The Plaintiff has provided the Court with copies of all notes, all clearly bearing the signature of the Defendant, the amount of the debt, and the respective dates on which the loans become due. (Dkt. # 101, Ex. "C1" and "C2"). The Defendant has made no challenge regarding the existence and/or validity of the notes, nor the accuracy and correctness of the copies provided. That the Plaintiff is the legal holder of notes is also verified by documents memorializing the assignment by the Bank to Plaintiff. (Dkt. # 2, Ex. "D", pg. 1-3; Dkt. # 101, Ex. "C4"). Furthermore, Defendant admitted in his sworn deposition that the notes exist, that he signed the notes, and that Plaintiff is now the holder of the notes. (Dkt. # 101, Ex. "A"). That some balance is due and owing is sufficiently demonstrated by the evidentiary submissions. *Id.*

Although SGCI was the maker of the notes, Defendant personally guaranteed repayment of the loans. "An agreement providing for the payment of notes executed and to be executed by others in the event of the maker's default in payment is a guaranty." *Powell v. Sowell*, 245 Miss. 53, 62, 145 So. 2d 168, 171 *error overruled*, 245 Miss. 53, 146 So. 2d 576 (1962)(citing 24 Am.Jur., Guaranty, Sec. 2, p. 874). By the terms of the agreement admittedly signed by the

15

Defendant, the Defendant promised payment of the principal and interest upon the notes in the event of SGCI's default. (Dkt. # 101, Ex. "C2"). As it has been shown that the notes are in default, and because the Defendant has failed to raise any sort of claim or defense as to why his personal guaranty is no longer enforceable on the notes (other than the defense rejected below), the Defendant remains personally liable for the loan balances.

Defendant makes no claim that he did not owe a debt to the Bank. Defendant does not allege that the loan, security agreement or assignment were invalid, and – for reasons already explained – the parties had no new agreement or contract. With no evidence of a contractual modification or novation, Defendant remains liable under the terms of the Loan Documents.

2. Defendant's Right to Credit

Defendant's Response focuses solely on the issue of the disposal of collateral and whether or not Plaintiff carried out any such disposal or sale in a commercially reasonably manner: "the real issue in this case is whether or not the collateral which was obtained in support of the notes was disposed of in a commercially reasonable manner." (Dkt. # 105, pg. 1). However, Defendant has provided no evidence to show that any such sale has taken place. In fact, Plaintiff confirmed in his reply that no collateral has been sold. Defendant is correct that he is entitled to a credit once a sale occurs. MISS. CODE ANN. §§ 75-0-610(a) (disposition of collateral after default), 75-9-615(a) (application of proceeds of disposition). However, at this time, all of the collateral has not been delivered to the Plaintiff, and that which has been delivered has not been sold.[8] That the collateral is available for sale does not prohibit entry of judgment before any such sale takes place. MISS. CODE ANN. § 75-9-601(a) (after default, a

---

[8] As the parties have already agreed, the Certificates hold a combined value of $66,000.00. Defendant will be entitled to a credit of $66,000.00 once the Certificates are re-issued to Plaintiff by the Coahoma County Conservation League.

16

secured party "(1) May reduce claim to judgment, foreclose, or otherwise enforce the claim, [or] security interest... by any available judicial procedure; and (2) If the collateral is documents, may proceed either as to the documents or as to the goods they cover."); *see also, Rea v. O'Bannon*, 171 Miss. 824, 158 So. 916 (1935)("There is no inconsistency in the two remedies here available to [the secured creditor]. He could pursue the foreclosure to conclusion, or, if he deemed it advantageous to himself, he could...proceed at law to collect his debt in the law forum."); *W. Point Corp. v. New N. Mississippi Fed. Sav. & Loan Ass'n*, 506 So.2d 241, 243 (Miss. 1986).

Having found that the Defendant is liable under the Loan Documents, the Court now turns to the issue of damages.

### 3. Amount of Damages

For the reasons stated above, Plaintiff is entitled to a judgment for liability on the notes and possession of all collateral. Plaintiff has provided evidence only of a lump sum due for all unpaid principal, accrued and unpaid interest, and attorneys' fees, through June 19, 2013. However, Plaintiff is only entitled to unpaid principal, along with the interest accrued and attorney fees and expenses incurred through August 16, 2011, the date the bankruptcy case was filed (the "Petition Date"). Pursuant to 11 U.S.C. § 506, Plaintiff would only be entitled to post-petition interest, fees and expenses if he were oversecured:

> (b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C.A. § 506 (West). As all evidence and the Plaintiff's arguments demonstrate, the Plaintiff is undersecured and thus not entitled to post-petition fees and expenses. *Id.*

17

Plaintiff's evidentiary submission does not include an itemization or per diem so as to enable the Court to determine the accrued interest or attorney fees through the Petition Date. In addition, the Defendant is entitled to some credit for the repossessed collateral (in addition to the $66,000.00 for the Certificates). However, there is not sufficient evidence before the Court to make a determination as to the value of the collateral. As such, summary judgment as to the amount of the judgment is inappropriate and an evidentiary hearing will be necessary to determine damages.

### D.     Nondischargeability of Debts

Although an allusion to nondischargeability has been made in the Motion, Plaintiff never asserted a claim to have the debts owed by Defendant be declared nondischargeable. The Complaint was filed prior to the Petition Date, but was never amended to include a count for nondischargeability. Notice of the Chapter 13 Meeting of Creditors gave the Plaintiff warning that the deadline to object to the debtor's (Defendant's) discharge or to challenge the dischargeability of certain debts was January 6, 2012. (Case No. 11-13704, Dkt. # 18). At no point in the proceedings did Plaintiff seek leave to amend the original Complaint to raise the claim of nondischargeability, and no such amendments may now be made over a year and a half past the original deadline.

> One of the purposes for the strict time deadlines in Bankruptcy Rules 4004(a) and 4007(c), pertaining to objections to discharge and dischargeability, is to promote expeditious and efficient administration of bankruptcy cases by assuring parties that, within 60 days, they know whether and which debts are subject to objection to discharge; these rules place a heavy burden on creditors to protect their rights.

*In re Riggert*, 399 B.R. 453, 459 (Bankr. N.D. Tex. 2009); *see, e.g., Bank of Louisiana v. Bercier (In re Bercier)*, 934 F.2d 689, 693 n. 6 (5th Cir.1991). Accordingly, while the final judgment

ultimately entered by this Court will be a claim in the bankruptcy case, the claim will be subject to discharge at the conclusion of Defendant's bankruptcy case if Defendant meets all other requirements for a chapter 13 discharge.

### III.  CONCLUSION

Based on the law and the evidence submitted, Plaintiff is entitled to summary judgment as to all of Defendant's counterclaims. In addition, summary judgment is appropriate as to Defendant's liability on the Loan Documents, and as to Plaintiff's right to possession of the collateral for the loans, including the Certificates.

Defendant, however, is entitled to a credit towards the debt for the full value of the Certificates, which the parties have agreed is $66,000.00. The Defendant is further entitled to credit against the judgment for the value of any collateral received by Plaintiff. Although summary judgment resolves the issue of liability on the debts, the total amount of claim cannot be determined at this time.

Consequently, the issues remaining to be resolved are limited to the amount of the unpaid principal, prepetition interest, prepetition fees and expenses, and the amount of credit to be given against the judgment for any collateral received by the Plaintiff (other than the $66,000.00 which has already been determined). A status conference will be scheduled by the Court to discuss the remaining issues to be resolved at trial. Accordingly, it is hereby

**ORDERED, ADJUDGED** and **DECREED** that the Motion for Summary Judgment is **GRANTED** as to all of Defendant's counterclaims and as to Plaintiff's right to possession of the Certificates and the other collateral. Coahoma County Conservation League is hereby **DIRECTED** to issue new certificates in Charles Ziegler's name. Plaintiff's Motion for

Summary Judgment is also **GRANTED** as it relates to Defendant's liability on the loans, but **DENIED** as to damages, with the amount to be determined at trial.

SO ORDERED on September 3, 2013.

/s/ Jason D. Woodard
Jason D. Woodard
United States Bankruptcy Judge